By the Court.
On March 23, 1922, the council of the city of Kenton passed an ordinance, effective May 22,1922, fixing 60 cents per 1,000 cubic feet, and a minimum charge of 60 cent's per month, as the rates and charges to be made by the Hardin-Wyandot Lighting Company for gas, and gas service, respectively, in the city of Kenton.
The Hardin-Wyandot Lighting Company entered an appeal from the ordinance to the Public Utilities Commission, following which an appraisal of the gas property of the Hardin-Wyandot Lighting Company was ordered by the Commission.
On August 9, 1922, an entry certifying tentative valuation was served by registered mail upon all parties in interest, which tentative valuation was not objected to, and hence, according to law, became *208 the final valuation as the basis fox* rate-making purposes.
Following a hearing on September 26, 1922, the Commission made and entered its finding and order on November 27, 1922, declaring the rates and charges fixed by the said ordinance to be unjust and unreasonable, and substituted therefor rates and charges higher than those fixed in the ordinance, but lower than those sought by the appellant.
The finding and order of November 27,1922, were in full as follows:
“This matter coming on to be heard by the Commission on the pleadings, evidence, exhibits and appraisements, and no protests having been made thereto by either the company or the-city or by any one else, party in interest, the Commission finds that the tentative valuation certified herein upon the 9th day of August, 1922, of the natural gas property, used and useful by said the Hardin-Wyandot Lighting Company, for the furnishing of such service within the corporate limits of the city of Kenton, Ohio, determining the present value of such property to be -the sum of $81,610.46, should be, and hmeby it is adopted by this Commission as the permanent valuation for rate-making purposes herein.
“And the Commission, coming now to consider the complaint and appeal of said the Hardin-Wyandot Lighting Company of and from an ordinance, passed by the council of the city of Kenton, Ohio, on the 23d day of March, 1922, fixing the maximum price to be charged for natural gas to the consumers thereof in said city of Kenton, Ohio, for a period of two years from and after the 24th day of March, 1922, and being fully advised in the premises, and *209 having caused an appraisement to be made and having ascertained and hereinbefore determined and fixed the value of all of the property of said company actually used and useful for the convenience of the public in the furnishing of natural gas service in the said city of Kenton, Ohio, excluding therefrom the value of any franchise or right to own, operate, or enjoy the same in excess of the amount (exclusive of any tax or annual charge) actually paid to any political subdivision of the state or county as a consideration for the grant of such franchise or right, and exclusive of any value added thereto by reason of a monopoly or merger, and having due regard to the necessity of making reservation from income for surplus, depreciation, and contingencies, and having taken into consideration all other matters which were deemed proper, finds:
“That the reasonable cost of the appellant for the distribution of natural gas to the inhabitants of the city of Kenton, Ohio, should be the sum of $1,610 per annum;
“That, while the actual total operating expenses, exclusive of distribution expense, of the appellant for a period of 12 months has been somewhere in the neighborhood of $12,000, a plant of the size and condition of the one under consideration 'should and could be reasonably operated at an annual expense of not to exceed $9,000;
“That the taxes probably assessable against the appellant in consequence of the furnishing of natural gas service in the city of Kenton, Ohio, for a period of one year, would be the sum of $2,749;
“That, due to the uncertainty of the future supply of ga's, a comparatively high rate of deprecia *210 tion should be allowed on a natural gas plant, and that an annual allowance of 6 per centum (applied to the valuation hereinbefore fixed, viz., $81/610.45), or $4,896, would be reasonable for the depreciation charge for appellant’s property used and useful in the furnishing of natural gas service to consumei’s within the city of Kenton, Ohio;
“That, due to the hazard of the business and to the uncertainty of the continuing supply of natural gas, an annual return of 8 per centum should be allowed upon said valuation, and that such a return on said valuation, to-wit, $81,610.46, would produce $6,528;
“That, while the company’s experience in the past has shown a large amount of unaccounted for gas, the loss for unaccounted for gas in a natural gas plant operated and maintained in a reasonable manner should not exceed from 9 to 15 per centum, and, in this case, an allowance of 13 per centum for unaccounted for gas would be reasonable;
“That, while the appellant sold 118,000,000 cubic feet of gas in the 12 months ended August, 1922, and, although this amount would be-decreased somewhat by reason of an increase in rates (the appellant submits as its estimate that the probable amount to be sold would be under 100,000,000 cubic feet), it is reasonable to expect that the appellant will sell at least 110,000,000 cubic feet of gas per annum;
“That, in order to sell 110,000,000 cubic feet and make an allowance of 13 percentum for unaccounted for gas, the appellant would have to purchase 124,-000,000 cubic feet of gas; and
“That said gas will cost the appellant 45 cents per 1,000 cubic feet.
*211 “The Commission, therefore, further finds:
“That a reasonable cost of supplying natural gas to the inhabitants of the city of Kenton, Ohio, for a period of 12 months, would be:
Expense for the gas purchased................ $55,800.00
Operating expenses (distribution expense and other expenses) .................... 10,610.00
Taxes .............................................................. 2,749.00
Depreciation at 6 per cent......................... 4,896.00
Return on valuation at 8 per cent............. 6,528.00
Total.............................................. $80,583.00
“That, while it would be necessary to charge 73.26 cents per 1,000 cubic feet for the appellant to earn the above amount by distributing 110,000,000 cubic feet of gas, since the city’s ordinance has provided for a minimum charge and this minimum charge will be a source of some revenue, the reasonable rates and charges for the furnishing of natural gas to the inhabitants of the city of Kenton, Ohio, would be 70 cents per 1,000 cubic feet, and a monthly minimum charge of 70 cents.
“In fixing the above valuation and in allowing the above items of expense the Commission has been mindful that the appellant company supplies customers other than those within the corporate limits of the city of Kenton and has only fixed the valuation of the property within the corporate limits, and apportioned the expenses so that they include only the expenses within the corporate limits of this city,
“The Commission further finds:
“That the rates and charges following, to-wit, per 3,000 cubic feet in one month, 60 cents; monthly *212 minimum charge per customer, 60 cents—so fixed by said ordinance—are unjust and unreasonable, and ought not to be ratified and confirmed, and that just and reasonable rates and charges should be substituted therefor;
“That the rates and charges following, to-wit, per 1,000 cubic feet in one month, 70 cents; monthly minimum charge per customer, 70 cents—are just and reasonable rates and charges for the service furnished by said appellant; and
“That the gross and net revenues derived by said the Hardin-Wyandot Lighting Company from furnishing natural gas to consumers thereof in the city of Kenton, Ohio, at rates, prices, and charges herein found by the Commission to be just and reasonable, will be sufficient to yield said the HardinWyandot Lighting Company a reasonable compensation for such service.
“It is therefore ordered that the rates and charges hereinbefore found and determined by this Commission to be just and reasonable for the furnishing of natural gas service by said the Hardin-Wyandot Lighting Company to consumers thereof within the city of Kenton, Ohio, be, and hereby they are, substituted for the rates and charges fixed by said ordinance, which the Commission has found to be unjust and unreasonable.
“And the Commission having made inquiry and investigation with respect to the ability of said the Hardin-Wyandot Lighting Company to furnish natural gas service to consumers thereof within the city of Kenton, Ohio, during the period fixed by said ordinance, and having found that said the HardinWyandot Lighting Company is and will be able to *213 furnish its said product in said city during said period, it is, therefore, further ordered that rates, prices, and charges not greater than nor in excess of the rates, prices, and charges for natural gas furnished by said the Hardin-Wyandot Lighting Company to the citizens and private consumers, and to the public buildings, grounds, streets, lanes, alleys, avenues, and market places of the city of Kenton, Ohio, for public and private consumption, which the Commission has found herein to be just and reasonable, be and remain in force and effect for the period of two years fixed and prescribed by the said ordinance herein complained of and appealed from; and said the Hardin-Wyandot Lighting Company hereby is notified, directed, and required to furnish its said product to consumers thereof in the said city of Kenton, Ohio, for and during said period.”
An application for rehearing upon this finding and order was denied, and the lighting company files its petition in error in this court, claiming: First, that the Commission’s finding and order of November 27, 1922, and the denial of a rehearing are against the weight of, contrary to, and unsupported by the evidence; and, second, that the Commission’s finding and order of November 27, 1922, and denial of a rehearing, are contrary to law.
Are the finding and order of November 27, 1922, made by the Commission, and its denial of a rehearing, against the weight of, contrary to, and unsupported by the evidence, and contrary to lawf
It is the settled law of this state that this court will not substitute its judgment for that of an administrative body created pursuant to the act of the Legislature as to matters within its province. Be *214 fore this court will interfere with the order of the Commission, it must appear from a consideration of the record that the action of the Commission was unlawful or unreasonable. Hocking Valley Ry. Co. v. Public Utilities Commission, 92 Ohio St., 362, 110 N. E., 952.
This case was upheld in principle by the cases of Settle v. Public Utilities Commission, 94 Ohio St., 417, 114 N. E., 1036, and Village of St. Clairsville v. Public Utilities Commission, 102 Ohio St., 574, 132 N. E., 151.
We have then to consider whether the finding and order of the Commission are against the weight of the evidence, unreasonable, or unlawful.
The first error, which plaintiff in error alleges exists in the finding and order of the Commission, is the fact that the Commission finds that a plant the size of the one under consideration should and could be reasonably operated at an annual expense of not to exceed $9,000 and uses that figure as a partial basis for the determination of the rate.
Plaintiff in error objects to this finding on the ground that the estimate of the Commission’s auditors for yearly operating expenses amounted to $11,-867.66. This estimate, however, was not the only evidence with regard to expenses of operation before the Commission. The amount of general expenses for the entire year 1921, shown by the books of the company was $4,546.60. In Mr. Magley’s testimony, he states that in the year 1922, during eight months of the time upon which the auditors based their estimate of $11,867.66, the company did a considerable amount of repairs; that they had been to *215 “quite a little extra expense in the way of changing mains in Kenton,” moving, changing, repairing, and replacing; that 600 feet of larger mains were laid in South Kenton and the lines had to he changed from the Scioto river three or four different times, due to the dredging of the river, which necessitated quite an additional expense.
The Commission evidently considered together the amounts of operating expenses shown by the company’s books for the year 1921, namely, $4,546.60, and the estimate of the Commission’s auditors, $11,-867.66, basing its estimate not merely upon the discrepancy between these two figures, but also upon the admission of the company that it had done a considerable amount of unusual extension of mains during 1922. Under the evidence in the case, the conclusion of the Commission can hardly be said to be unreasonable, nor against the weight of the testimony in that regard.
The second objection urged by plaintiff in error to the finding and order of the Commission is that the Commission fixes the allowance for unaccounted for gas at 13 per cent., notwithstanding the fact that higher figures of average loss of gas were shown by the evidence in the record.
The evidence before the Commission, however, showed a 12.2 per cent, loss in March, 1922, and a 22.4 loss in February, 1922. This discrepancy in the loss was unaccounted for on the record. It also is significant that Mr. Magley testifies that there is a free consumption of 65,000 cubic feet per month, or 780,000 cubic feet per year, which enters into the unaccounted for gas; that is, the unpaid-for gas.
*216 This plant also was in comparatively good condition. In the Lima case, 106 Ohio St., 379, 140 N. E., 147, the loss of unaccounted for gas was 14.8 per cent., and the Lima mains were in poor condition. In this case, with a plant in comparatively good condition, a finding of 13 per cent, loss under the record is not against the weight of the evidence, nor unreasonable.
The Commission also is attacked by plaintiff in error because of its finding that it is reasonable to expect the plaintiff in error will sell 110 million cubic feet of gas per year under the increased rate of 70 cents per thousand, and for its use of that estimate in fixing the rate, although only 118 million cubic feet of gas per year had been sold under the previous 60-cent rate.
It was admitted by the Commission, and is also noted by this court, that as the price of a commodity increases, the sale thereof usually decreases. The plaintiff in error and the Commission take issue, not over that fact, but over the amount of the decrease;
The plaintiff in error objects that the report of the engineer of the Commission was to the effect that at Lima the decrease in sales had been 30 per cent., at Wapakoneta 35 per cent., at St. Marys 38 per cent., and hence the Commission should have allowed for a greater decrease in this case.
In these towns, however, the engineer reported that the old rates were about 50 cents and the new rates from $1.05 to $L20; that is to say, the incréase in the price of gas in these cities wa.s over 100 per cent, increase in cost to the consumer, and still the decrease in the consumption of gas was only between 30 and 40 per cent. If the decrease in consump *217 tion- was only 30 per cent., with a 100 per cent, raise, it is fair to assume that the decrease would he much smaller with the 16.6 per cent, raise in this ease.
The only evidence in the record on this point consists of estimates of what the decreased amount of sales would be. It was therefore not unreasonable for the Commission to consider evidence upon the experience of neighboring cities under similar circumstances, and to be guided by that experience in the making of its findings. Nor can we hold that in this point the finding of the Commission was against the weight of the evidence.
Lastly, the plaintiff in error challenges the Commission’s action in substituting a rate of 70 cents per 1,000 cubic feet of gas, and a minimum charge of 70 cents per month, for the rates and charges fixed by the ordinance; that is, 60 cents per 1,000 cubic feet of gas and a minimum monthly charge of 60 cents.
In its order the Commission does find, however, that it would be necessary to charge 73.26 cents per 1,000 cubic feet for the plaintiff in error to earn expenses, taxes, depreciation, and a return on valuation at 8 per cent. The Commission says that since the city’s ordinance has provided for a minimum charge, and this minimum charge will be a source of some revenue, the reasonable rates and charges for the furnishing of natural gas to the inhabitants of the city of Kenton, Ohio, are 70 cents per 1,000 cubic feet and a monthly minimum charge of 70 cents.
*218 As laid down in this court by Chief Justice Marshall in the case of Village of St. Clairsville v. Public Utilities Commission, 102 Ohio St., 574, at page 583, 132 N. E., 151, at page 153:
“Inasmuch as this is the first review of the evidence, the situation of this court in such matters is analogous to that of the Court of Appeals in weighing and reviewing the evidence in an error proceeding from the court of common pleas. Applying such analogy, the findings of the Commission, should not be disturbed unless they are so manifestly against the weight of the evidence, and so clearly unsupported by it, as to show, misapprehension, or mistake, or willful disregard of duty. This court has not had the opportunity, of observing the demeanor of the witnesses, and is therefore not as competent to weigh the evidence as the Commission should be.”
Plaintiff urges that the Commission disregarded the testimony in the establishment of this rate, counter to its own finding. It must be remembered, however, that, while a minimum charge does entail a cost of bookkeeping, it does not entail cost of gas proportional to the charge for gas to other consumers. Moreover, the plaintiff’s claim is based upon records which consist partly of estimates and figures given by the company. Certain of these figures carry little' weight, as the company was manufacturing electric current for sale at the same time that it was operating a gas-distributing system, and had, prior to January 1, 1922, kept no separate accounts of the different classes of business.
The company’s own exhibit also justifies a rate of $1.02%, based upon a valuation of $142,523.15 upon *219 the plant, and an operating expense of $61,062.29, and at the same time asks for a rate of 85 cents upon the valuation of $82,616.64, as placed by the Commission, with an operating expense of $53,067.18.
The Commission was justified in taking these contradictions into consideration upon the full examination of the case, and in view of these facts and the entire record the rate fixed was not unreasonable, nor against the weight of the evidence.
Since the court is compelled upon the entire record to hold that the finding and order made by the Public Utilities Commission, and its denial of rehearing, were not unreasonable, nor against the weight of the evidence, and as the legality of the finding and order is challenged upon the sole ground that the finding and order are unsupported by the evidence, the court also holds that the finding and order are not illegal.
The order will therefore be affirmed.

Order affirmed.

Marshall, C. J., Wanamaker, Robinson, Jones, Matthias, Day and Allen, JJ., concur.